UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KIMBERLY KAYE SELBY,
     Plaintiff,

vs.                                 Case No.: 3:20cv2335/MCR/EMT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]
       Defendant.
_____/

## REPORT AND RECOMMENDATION

This case was referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*   It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.   Upon review of the record before the court, it is

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021.   Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Andrew Saul as the Defendant in the case.

the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by application of proper legal standards and that the decision of the Commissioner, therefore, should be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

## ISSUE ON REVIEW

Plaintiff raises a single issue on review, arguing the ALJ erred in failing to find Plaintiff's back pain and sciatica severe impairments and failing to address either condition in her decision, including Plaintiff's complaints in that regard (ECF No. 16 at 2).

## PROCEDURAL HISTORY

On July 25, 2016, Plaintiff filed an application for SSI, alleging disability beginning May 28, 2006, due to sciatica, chronic obstructive pulmonary disease (COPD), nerve damage, uninhibited neurogenic bladder dysfunction, ovarian cyst, swelling and inflammation of the digestive system, chronic lower back pain and spine pain, bilateral carpal tunnel syndrome, hiatal hernia, and gastroesophageal reflux disease (GERD)[2] (tr. 15, 80–81, 68–69).[3]   The application was denied

---

[2]  Plaintiff also filed a claim for Disability Insurance Benefits; however, the instant appeal pertains solely to Plaintiff's application for SSI benefits (*see* ECF No. 16 at 1).

[3]  The administrative record, as filed by the Commissioner, consists of eleven volumes (ECF Nos. 10–1 through 10–11) and has 1005 consecutively-numbered pages.   References to the record will

initially and on reconsideration; Plaintiff thus requested a hearing before an ALJ (tr. 15).   A hearing was held on November 29, 2018; on February 27, 2019, the ALJ issued a decision finding Plaintiff not disabled under the Act (tr. 15–30).   Plaintiff petitioned the Appeals Council for review of the ALJ's decision (*see* tr. 1).   The Appeals Council denied Plaintiff's request (*id.*).   The ALJ's decision thus stands as the final determination of the Commissioner subject to review in this court.   *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007); *see also Walker v. Soc. Sec. Admin., Comm'r*, No. 19-15039, 2021 WL 503280, at *3 (11th Cir. Feb. 11, 2021) ("because the Commissioner has delegated h[er] authority to make the finding at the hearing level to an administrative law judge, the finding is effectively reserved to the administrative law judge.").

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issue raised in this appeal, including the following:

- Plaintiff has not engaged in substantial gainful activity since May 28, 2006, the alleged onset date (tr. 17).

---

be by "tr.," for transcript, followed by the page number.   The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

- Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome, status post right carpal tunnel decompression, migraine headaches, interstitial cystitis, neurogenic bladder, urinary frequency, COPD, GERD, duodenitis, hypertension, and obesity (*id.*).

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (tr. 19).

- Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except she requires the ability to occasionally change positions throughout the workday for relief of postural discomfort; can never climb ladders, ropes, or scaffolds or kneel, crouch, or crawl; can occasionally climb ramps and stairs, balance, and stoop; can handle, finger, and feel frequently; must avoid work at unprotected heights and around hazardous machinery; must avoid concentrated exposure to dust, odors, gases, fumes, and poor ventilation; must avoid work in temperature extremes, wetness, and humidity; and can understand, remember, apply, and carry out simple repetitive instructions and persist at that level of complexity for eight hours a day, five days per week due to physical symptoms (tr. 19–20).

- Plaintiff is unable to perform any past relevant work (tr. 28).

- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy Plaintiff can perform (tr. 29).

- Plaintiff has not been under a disability, as defined in the Act, from May 28, 2006, the alleged onset date, through February 27, 2019, the date of the ALJ's decision (tr. 30).[4]

## STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence in the record and based on application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.'"); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if,

---

[4] Because Plaintiff appeals only the decision denying her application for SSI, the timeframe relevant to Plaintiff's claim is July 25, 2016 (date she applied for SSI), through February 27, 2019 (date of the ALJ's decision). *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

in light of the record as a whole, the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Lewis*, 125 F.3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)); *Lewis*, 125 F.3d at 1439. In determining whether substantial evidence supports the ALJ's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the claimant not only is unable to perform her previous work "but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[5] the Commissioner analyzes a disability claim in five steps:

1.   If a claimant is performing substantial gainful activity, the claimant is not disabled.

2.   If a claimant is not performing substantial gainful activity, the claimant's impairments must be severe before she can be found disabled.

3.   If a claimant is not performing substantial gainful activity and has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if the impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.   If a claimant's impairments do not prevent her from performing past relevant work, the claimant is not disabled.

---

[5]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416).   Therefore, citations in this Report and Recommendation should be considered to refer to the appropriate parallel provision.   The same applies to citations to statutes or regulations found in quoted court decisions.

5.     Even if the claimant's impairments prevent performance of past relevant work, if other work exists in significant numbers in the national economy that accommodates a claimant's RFC, the claimant is not disabled.

The claimant bears the burden of establishing a severe impairment that precludes past work.   20 C.F.R. § 404.1512.   If a claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.   *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work identified by the Commissioner.   *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## FACTUAL BACKGROUND[6]

Plaintiff was twenty-seven years old on the alleged onset date of May 28, 2006 (tr. 43).   At the time of her hearing before the ALJ, Plaintiff was thirty-nine years old, stood 5'1" tall, and weighed 254 pounds (tr. 43–44).   Plaintiff testified she had a high school education and past work as an unpaid healthcare

---

[6] The recitation of facts set forth below is derived from Plaintiff's testimony at the hearing before the ALJ and the administrative record and is limited to facts bearing on the single issue raised in this appeal.

surrogate and cashier; she also worked in quality control for a manufacturing company and various positions for McDonald's (tr. 44, 46–50).  Plaintiff was terminated from her last employment—as a cashier at Walmart—because she missed work due to back pain, hemorrhaging, and collapsing several times while on the job (tr. 47–50).

 Plaintiff testified she had not driven for three years because when she pressed "the gas pedal or the brake, [her] leg [would] start[] to jerk and shake really bad, and [she] [couldn't] maintain the pressure" (tr. 45).  She said she used a walker, walking stick, and cane (tr. 45–46).  Plaintiff had not earned income since May 28, 2006, although she served as the healthcare surrogate for her former husband between 2006 and 2010 (tr. 46).  Plaintiff explained she put her health "on the back burner" during that time so she could tend to her former husband's needs (*id.*).

Plaintiff testified sleeping was very difficult because she could not lie on her back or stomach and had to sleep sitting up at an angle to help with breathing and back pain (tr. 51).  When her stomach was upset, she slept sitting up in case she vomited (*id.*).  Plaintiff's counsel asked why she was leaning forward with her elbows on the table as she testified, and Plaintiff stated her back started hurting "real bad," requiring her to lean forward and turn her hips outward to

take pressure off her spine (tr. 51–52).   Plaintiff also stood up while testifying, purportedly to relieve back pain (tr. 59).

Plaintiff said she suffered from such severe urinary incontinence and frequency that she carried a backpack containing a change of clothes and cleaning supplies whenever she left the house (tr. 52–53).   Plaintiff had the backpack with her at the hearing (tr. 52).   Plaintiff testified she could stand for only a couple of minutes to wipe down a counter without stopping to take a break and sit down (tr. 53–54).   She said standing sometimes made "it feel[] like someone [was] taking a sledgehammer . . . to both sides of [her] spine" (tr. 54). Walking was difficult because her legs would go numb and drop out from beneath her without warning, as a result of which she would constantly fall and bruise her legs (tr. 54).   When that occurred, she would immediately find a place to sit down (*id.*).

Plaintiff was able to occasionally shop with her husband, but she had to plan the trip so she would be able to sit and catch her breath upon arriving at the store and then go to the restroom (tr. 57).   If they were going to be shopping "for a while," she would use a motorized cart; if it was going to be a quick trip, she would walk (*id.*).   Plaintiff could not unload the shopping cart because bending over to "pull the stuff out" and carrying it into the house caused her to

lose her breath and her back to hurt (tr. 58–59).  She testified there was no activity that did not aggravate her back and ability to breathe, including swimming, which Plaintiff loved but was no longer able to do (*id.* at 59).

A vocational expert, Eric R. Anderson, Jr., also testified at the hearing (tr. 60).  Mr. Anderson testified Plaintiff's past relevant work included work as a cashier, checker, and quality control inspector, all of which are light, semi-skilled jobs (tr. 60–61).  He said Plaintiff also was employed as a fast-food worker, which is light and unskilled work (tr. 61).

The ALJ posed a number of hypotheticals to Mr. Anderson.  The ALJ first asked Mr. Anderson to consider an individual of Plaintiff's age, education, and work experience, who was limited to sedentary work; could understand, remember, apply, and carry out simple, repetitive instructions; had to occasionally change positions throughout the workday for relief of postural discomfort; could never climb a ladder, rope, or scaffold; had to avoid kneeling, crouching, and crawling; could occasionally climb ramps and stairs and balance and stoop; could frequently feel and finger with the bilateral upper extremities; and had to avoid the following: working at unprotected heights and around hazardous machinery; concentrated exposure to dust, odors, gases, fumes, and poor ventilation; and working in temperature extremes, wetness, and humidity

(tr. 61–62).   The ALJ asked whether such an individual would be able to perform Plaintiff's past work as a cashier, checker, quality control inspector, or fast-food worker (*id.*).   Mr. Anderson responded in the negative but said such an individual could work as a lens inserter, document preparer, and surveillance system monitor, all of which are sedentary, unskilled jobs (tr. 62).

The ALJ posed a second hypothetical, asking Mr. Anderson to consider the same individual as in the first hypothetical who could frequently, but not constantly, handle (tr. 63).   The ALJ asked whether such an individual would be able to perform any work in the national economy (*id.*).   Mr. Anderson responded that such an individual could perform the jobs previously identified (tr. 63).   The ALJ then asked Mr. Anderson to change the handling and fingering to occasionally, rather than frequently (*id.*).   Mr. Anderson testified the lens inserter and document preparer jobs would no longer be available but the individual could work as a surveillance system monitor (*id.*).

The ALJ next asked Mr. Anderson to assume the individual in the first hypothetical who would be off task fifteen percent of the workday due to pain (*id.*).   Mr. Anderson testified such an individual would be unable to work (*id.*). The same was true if the individual would be absent two days per month due to interference from physical symptoms (tr. 64).

## RELEVANT MEDICAL HISTORY

The first evidence in the record of medical treatment on or after July 25, 2016, the date Plaintiff filed her application for SSI, is a visit to Santa Rosa Community Clinic (SRCC) on September 12, 2016, to re-establish care, apparently after the doctor she had been seeing closed his local office (tr. 612).   Plaintiff saw Charlene Echols, A.R.N.P., who indicated Plaintiff sought treatment for nausea, GERD, and COPD (tr. 612–13).   Plaintiff had normal posture and a normal gait but indicated she had back and joint pain and backache (tr. 613).   Echols assessed COPD, with which Plaintiff apparently was diagnosed two years before the visit, and referred Plaintiff to a pulmonologist (*id.*).   Echols noted Plaintiff had "numerous other issues to discuss," including chronic back pain and sciatica (*id.*).

Plaintiff returned to SRCC on September 29, 2016, for a routine checkup; she again saw Echols (tr. 665).   Echols noted the visit was Plaintiff's second and that Plaintiff had not completed lab work Echols ordered during the initial visit or provided certain forms Echols requested (*id.*).   Echols indicated Plaintiff presented with chronic lumbar back pain that occurred without any known injury and involved the lower back (*id.*).   Echols noted Plaintiff's report of low back pain since 2003, unrelated to injury, and "'pins and needles' pain radiating down both legs'" (tr. 666). Plaintiff also reported lipomas of the back, which she said "'ma[d]e [her] back pain

worse'" (*id.*).   Plaintiff said "'prednisone ma[de] [the] back pain extremely worse'"

and that muscle relaxers and anti-inflammatory medication "'NEVER HELP[ED]'"

(*id.*).

Plaintiff was admitted overnight to Santa Rosa Medical Center (SRMC) on

October 18, 2016, for acute bronchospasm and sinusitis (tr. 662, 675).   Notes from

the visit indicate Plaintiff had no spinal or costovertebral tenderness, full range of

motion in the back, a normal gait, and full strength in all extremities (tr. 679).

During a February 20, 2017, visit to SRCC, Plaintiff was feeling well (tr. 745).   She

requested medication refills and complained of problems with her wrists and ankles,

the latter of which she said cracked and suddenly gave way (tr. 744).   She also said

she had loss of grip for the past six to eight weeks in both hands (*id.*).   She denied

backache and joint and muscle pain and had full range of motion in all joints but

tenderness over the lumbar vertebra (tr. 745).   Contrary to Plaintiff's reports, the

provider noted Plaintiff had "excellent grips" and upper and lower extremity strength

(*id.*).

Plaintiff sought treatment with Dr. Mohamed Sultan, who apparently was in

the neurology department at SRMC, on March 8, 2017 (tr. 789, 791).   Plaintiff

reported chronic lower back pain for the past five years, which extended to her legs

with occasional weakness in her legs and intermittent tingling and numbness in both

feet (tr. 789).    She also indicated she had muscle spasms in her legs, intermittently, and occasional muscle spasms in her back, especially on the left side (*id.*).    She said she had muscle aches and back pain but no muscle weakness, joint pain, or exercise intolerance (tr. 790).    Dr. Sultan ordered an EMG to evaluate Plaintiff for lumbosacral radiculopathy (tr. 791).

Plaintiff returned to Dr. Sultan on April 11, 2017, reporting lower back pain with pain and numbness in the upper and lower extremities (tr. 784, 786).    Dr. Sultan noted the EMG "showed findings more consistent with lumbosacral radiculopathy affecting L4 and L5-S1 on the right with mild active denervation in the L5-S1 muscles" (tr. 786).    "In addition, the study showed findings more consistent with bilateral carpal tunnel syndrome which was severe on the right and mild to moderate on the left.    There was no evidence of peripheral neuropathy" (*id.*).    Plaintiff had full range of motion in the cervical spine with no tenderness (*id.* at 787).    With regard to the back, she had no tenderness, spasms, or bony abnormalities with full range of motion and normal curvature (*id.*).    She also had full range of motion in the low back, with no pain, spasms, or bony abnormalities (*id.*).    Dr. Sultan assessed lumbosacral radiculopathy with lower back pain that extended to the lower extremities and bilateral carpal tunnel syndrome (tr. 787).

He referred Plaintiff for bilateral carpal tunnel release and indicated he would schedule an MRI of the lumbar spine (*id.*).[7]

During a visit with a pulmonologist two days later, on April 13, 2017, the provider observed normal gait and station and no abnormalities of the joints, bones, or muscles, including tenderness, and normal movement of all extremities (tr. 772). When Plaintiff visited Women's Health Center on October 16, 2017, for treatment of a cyst, she was feeling well and denied backache and joint and muscle pain (tr. 742).

Plaintiff sought treatment for various issues on February 16, April 27, May 6, and May 12, 2018, and, each time, denied backache and joint and muscle pain (tr. 725–26, 729–30, 735–36, 739).   On June 5, Plaintiff saw Diane Hudson, M.D., for follow-up to a May 12 urgent care visit for a sinus infection (tr. 720).   She also complained of a stomach ache for the past month and abdominal and low back pain, which she rated an eight on a ten-point scale (tr. 720–21).   She was feeling well, however, and denied backache and joint and muscle pain (tr. 721).   The same was

---

[7] Plaintiff had carpal tunnel surgery on May 12, 2017 (tr. 853).   During a post-operative visit, the surgeon indicated that despite Plaintiff's complaints of continued difficulty and sensitivity, the incisions healed satisfactorily, Plaintiff had full active range of motion, subtle weakness, and no paresthesia to the fingers (tr. 857).   The surgeon felt "as though the patient [was] coming along better than she le[t] on" (*id.*).

essentially the case when Plaintiff returned to Dr. Hudson on July 23 with complaints of dizziness, weak spells, increased falls, and extreme nausea (tr. 714–15). Dr. Hudson indicated Plaintiff was feeling well with no backache and no joint or muscle pain (tr. 715). Plaintiff reported back pain, however, which she rated a seven on a ten-point scale (*id.*).

During an August 26, 2018, appointment with Malissa Bise, A.R.N.P., Plaintiff complained of right arm pain, numbness in her fingers, and "pain from the base of the skull to the bottom of her spine" (tr. 878). Treatment notes indicate Plaintiff was feeling well and had no backache or muscle pain (tr. 879). Plaintiff reported back pain at a seven on a ten-point scale, however, and the notes reflect she was in acute distress and crying due to pain (*id.*). Plaintiff had decreased range of motion in the head and neck when turning to the right but normal muscle strength in the upper extremities (*id.*). Ms. Bise assessed chest pressure, "most likely due to . . . musculoskeletal complaints," and indicated Plaintiff was to go to the emergency room for evaluation and treatment (tr. 880). The notes reflect neck swelling "PER PATIENT (not observed)" (*id.*).

Plaintiff went to the emergency room, as instructed, complaining of neck pain with swelling that radiated down the spine; she also complained of shoulder pain and a migraine headache (tr. 891). Plaintiff exhibited "extreme tenderness" to light

palpation extending to "major portion[s] of the body" (tr. 893).   Plaintiff's neck was tender, and she exhibited neck and shoulder pain, which was described as moderate (*id.*).   She had no midline back pain and no costovertebral angle tenderness or pitting edema, although she had upper back muscle spasms (tr. 893). The provider diagnosed medication reaction, right cervical radiculopathy, and trapezius muscle spasm (tr. 894).

Plaintiff returned to Dr. Hudson on September 10, 2018, complaining of pain in both arms (tr. 874).   Dr. Hudson noted Plaintiff did not have an MRI at the emergency room or x-rays, as recommended (tr. 874, 882).   Dr. Hudson noted neckache and joint stiffness in the right shoulder with no muscle pain (tr. 875). Plaintiff rated the pain in her upper back and right shoulder a six out of ten (*id.*). She had normal posture and gait but decreased range of motion of the head and neck when turning to the right (tr. 876).   Dr. Hudson noted Plaintiff's speech was "over-productive" and her presenting behavior was "[d]ramatic" (*id.*).   Dr. Hudson diagnosed suspected cervical radiculopathy at C8 and indicated she could not determine the level at which Plaintiff's neck and shoulder entrapment occurred, likely due to Plaintiff's complaints of pain over "major portions" of her body (*id.*). Dr. Hudson again recommended x-rays of the cervical spine (*id.*).   Plaintiff had an MRI of the cervical spine on October 2, 2018, which was unremarkable (tr. 885).

## DISCUSSION

Plaintiff argues the ALJ erred in not finding back pain and sciatica to be severe impairments and failing to address her complaints in that regard (ECF No. 16 at 2, 20–22).   As set forth above, the ALJ found at step two that Plaintiff had a number of severe impairments (tr. 17).   As the Eleventh Circuit has observed, step two is a "'filter' requiring the denial of any disability claim where no severe impairment or combination of impairments is present."   *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).   In other words, step two is "designed to screen out groundless claims, where the applicant's medical problems could not possibly prevent her from working."   *Id.*   "[T]here is no need for an ALJ to identify every severe impairment at step two."   *Id.* at 951.   "To proceed to step three of the evaluation process, an ALJ need only conclude that an applicant had 'at least one' severe impairment."   *Id.* (quoting *Jamison*, 814 F.2d at 588).   The ALJ thus did not err in failing to identify back pain and sciatica as severe impairments at step two— even if the conditions, in fact, constituted such.   And even if the ALJ had erred in that respect, any such error was harmless because the ALJ found other severe impairments at step two and proceeded to step three.   The inquiry, however, does not end there.

"Where an applicant has multiple impairments, the ALJ considers the combined effect of all impairments without regard to whether any individual impairment would demonstrate disability." *Id.* (citing 20 C.F.R. § 404.1523). "At step three of the sequential process, the ALJ determines whether an applicant has 'impairment(s)' that meets one of the listed disabilities." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). "The regulations state that, where no individual impairment meets a listing, the ALJ will consider whether a combination of impairments is medically equivalent to a listing." *Id.* (citing 20 C.F.R. § 404.1526). "While the ALJ did not need to determine whether every alleged impairment was 'severe,'" therefore, "[s]he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Id.*

In her decision, the ALJ found "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (tr. 19). The Eleventh Circuit has found such a statement "sufficient to demonstrate that the ALJ considered the cumulative effect of the applicant's impairments." *Tuggerson-Brown*, 572 F. App'x at 951 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002), and *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991), as "reaching the

same conclusion based on similar language").   In support of her finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, however, the ALJ stated that "[t]he objective record . . . fails to contain the objective findings and clinical signs set forth in any of the listing sections pertaining to the claimant's *severe* impairments" (tr. 19) (emphasis added).   The ALJ's statement in that regard demonstrates error.

Indeed, the statement indicates that in considering the cumulative effect of Plaintiff's impairments, the ALJ considered only Plaintiff's *severe* impairments— not the combined effect of *all* of Plaintiff's impairments, both severe and non-severe, as required.   *See, e.g., Daffin v. Colvin*, No. 2:14-CV-1221-TFM, 2015 WL 9295574, at *5 (M.D. Ala. Dec. 21, 2015) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1991), for the proposition that "[t]he ALJ is required to demonstrate that [she] has considered all of the claimant's impairments, whether severe or not, in combination.").   Because it appears the ALJ considered the combined effect of only Plaintiff's severe impairments, remand is required.   *See id.* (noting that because there was "no discussion on considering the combined effects of severe and

non-severe impairments," it was "not clear that the ALJ did consider ALL impairments in combination," requiring remand).[8]

## CONCLUSION

For the reasons set forth above, the undersigned finds the Commissioner's decision is not supported by application of proper legal standards and, therefore, that the decision should be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.[9]  *See Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

Accordingly, it is respectfully **RECOMMENDED**:

---

[8] Additional statements of the ALJ bolster the court's finding that she considered only Plaintiff's severe impairments after step two.  For example, immediately after identifying and listing Plaintiff's *severe* impairments, and only Plaintiff's severe impairments, the ALJ stated, "The above medically determinable impairments significantly limit the ability to perform basic work activities . . . ." (tr. 17–18).   She then considered whether those same "medically determinable impairments could reasonably be expected to cause the [pain and other symptoms] alleged" by Plaintiff (tr. 20).

[9] The court notes that in reviewing the legal principles upon which the ALJ's decision is based, it conducted a de novo review.   *See Moore*, 405 F.3d at 1208.   The court further notes that in reversing the ALJ's decision and remanding the matter, the court expresses no opinion on the merits of Plaintiff's claim for benefits.

That pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this Report and Recommendation, and that the Clerk be directed to enter judgment and close the file.

At Pensacola, Florida this 23rd day of September 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**